U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed April 30, 2008                                           United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| FORT WORTH OSTEOPATHIC | § | CASE NO. 05-41513-DML-7 |
| HOSPITAL, INC., D/B/A OSTEOPATHIC | § | |
| MEDICAL CENTER OF TEXAS, AND | § | |
| | § | |
| HEALTH CARE OF TEXAS, INC., D/B/A | § | CASE NO. 05-41503-DML-7 |
| OSTEOPATHIC HEALTH SYSTEM OF TEXAS, | § | |
| | § | |
| DEBTORS. | § | |

| | | |
|---|---|---|
| TEXAS ATTORNEY GENERAL, AS | § | |
| PROTECTOR FOR PUBLIC INTEREST IN | § | |
| CHARITY, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | ADVERSARY NO. 07-04075-DML |
| | § | |
| SHAWN K. BROWN, IN HIS CAPACITY AS | § | |
| CHAPTER 7 TRUSTEE AND REPRESENTATIVE | § | |
| OF THE BANKRUPTCY ESTATES OF HEALTH | § | |
| CARE OF TEXAS, INC., D/B/A | § | |
| OSTEOPATHIC HEALTH SYSTEM OF | § | |
| TEXAS, AND FORT WORTH OSTEOPATHIC | § | |
| HOSPITAL, INC., D/B/A OSTEOPATHIC | § | |
| MEDICAL CENTER OF TEXAS, ET AL., | § | |
| | § | |
| DEFENDANTS. | § | |

Memorandum Opinion – page 1

| | |
|---|---|
| SHAWN K. BROWN, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE AND REPRESENTATIVE OF THE BANKRUPTCY ESTATES OF HEALTH CARE OF TEXAS, INC., D/B/A OSTEOPATHIC HEALTH SYSTEM OF TEXAS, AND FORT WORTH OSTEOPATHIC HOSPITAL, INC., D/B/A OSTEOPATHIC MEDICAL CENTER OF TEXAS, ET AL.,<br><br>  CROSS-CLAIM PLAINTIFFS,<br><br>V.<br><br>EXECUTIVE RISK INDEMNITY, INC. AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>  CROSS-CLAIM DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |
| JAY G. BECKWITH, D.O., DAVID M. BEYER, D.O., JOHN ALLEN CHALK, ESQ., WINDFRED T. COLBERT, ESQ., BARTON E. HEAD, CPA, WILLIAM M. JORDAN, D.O., RANDALL L. KRESSLER, ESQ., GIBSON D. LEWIS, HARRIS F. "SAM" PEARSON, D.O., JANE E. SCHLANSKER, IRWIN SCHUSSLER, D.O., JOSEPH C. VALENTINE, JR., WILLIAM WALLACE, D.O., AND ESTATE OF DAVID IVORY,<br><br>  CROSS-CLAIM PLAINTIFFS,<br><br>V.<br><br>EXECUTIVE RISK INDEMNITY, INC. AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>  CROSS-CLAIM DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## **MEMORANDUM OPINION**

Before the court are summary judgment motions filed by Plaintiff Attorney General of Texas (the "AG" and the "AG Motion"), Defendant Shawn Brown in his capacity as chapter 7

trustee of the captioned debtors (the "Trustee" and the "Trustee Motion") and Defendants Executive Risk Indemnity, Inc. ("ERI") and National Union Fire Insurance Company of Pittsburgh ("NUFIC," and, together with ERI, the "Insurers," and the "Insurers Motion," referred to, together with the AG Motion and the Trustee Motion, as the "Motions"). The court heard argument respecting the Motions on April 16, 2008 (the "Hearing"). The court had previously received briefs and summary judgment evidence from each of the AG, the Trustee and the Insurers (collectively the "Parties"). In addition, over an objection by the AG, the court authorized Defendants Jay G. Beckwith, D.O., David M. Beyer, D.O., John Allen Chalk, Esq., Winfred T. Colbert, Esq., Kay Day, Barton E. Head, CPA, William M. Jordan, D.O., Randall L. Kressler, Esq., Gibson D. Lewis, Harris F. "Sam" Pearson, D.O., Irwin Schussler, D.O., Jane E. Schlansker, William Wallace, D.O., and the Estate of David Ivory (collectively the "D&O Defendants") to file a Statement of Position with respect to the Motions.

By the Motions the Parties seek partial summary judgment concerning the single issue described below. The Insurers also sought dismissal of claims asserted against them in this adversary proceeding based on lack of standing of the AG or the Trustee to assert those claims. Without finally ruling on the standing issues presented by the Insurers, the court, by email of April 15, 2008, advised the Parties that it believed the Trustee, at least, had standing to raise and seek relief as to the issue central to the Motions, and that, therefore, the court would reach the merits of that issue at the Hearing.

It is the court's view that the central issue presented by the Motions is subject to the court's core jurisdiction[1] pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). This

---

[1] This adversary proceeding has been the subject of a motion to withdraw the reference which was denied without prejudice to refiling by Hon. Terry R. Means of the District Court.

memorandum opinion embodies the court's findings and conclusions respecting the central issue, as described below, that is addressed in the Motions. FED. R. BANKR. P. 7052.

## I. Summary Judgment Appropriate

The Parties all agree that the Motions present no factual disputes. Accordingly, summary judgment on the issue presented is appropriate. *See* FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. Issue

**A.     Context**

The captioned adversary proceeding is one of two adversary proceedings[2] relating to the alleged misconduct of certain officers and directors (the "D&O Insureds"[3]) of Fort Worth Osteopathic Hospital ("FWOH") and Healthcare of Texas, Inc. ("HCT" and, together with FWOH, "Debtors"). On the one hand, as a consequence of this adversary proceeding, the AG hopes to recover "on Behalf of the Public's Interest in Charity," to be "cy pres'd" for use in Tarrant County, Texas, monies that will be (the AG hopes) paid by the Insurers in satisfaction of judgments obtained by the AG against the D&O Insureds. On the other hand, in the Trustee Suit, the Trustee seeks recovery (he hopes funded in part by the Insurers) for the benefit of Debtors' creditors.

The D&O Defendants, though not party to the Motions, take the position that their costs of defense and satisfaction of any judgment obtained against them by the AG or the Trustee are the responsibility of the Insurers under primary coverage provided by ERI under a liability policy

---

[2] The other is *Brown v. Adams*, Adv. No. 07-04015-DML (Bankr. N.D. Tex. filed Feb. 9, 2007) (hereinafter the "Trustee Suit").

[3] It is not clear to the court that all persons who may be subject to suit by the AG or the Trustee and may argue they are entitled to coverage under the Policies (as hereafter defined) are numbered among the D&O Defendants. Thus, the court provides this separate definition which includes but is not necessarily limited to the D&O Defendants.

(the "ERI Policy") and excess coverage provided through a policy issued by NUFIC (the "NUFIC Policy" and, together with the ERI Policy, the "Policies").

Each of the Policies was acquired by Debtors to provide, inter alia, officers and directors with coverage in connection with liability of the sort the AG and the Trustee assert. The Insurers, however, point to a provision of the ERI Policy, Endorsement 20, which is incorporated by reference into the NUFIC Policy. The Insurers argue that Endorsement 20 excludes any suit by the Trustee from the scope of the Policies' coverage. In the AG Motion, the AG adopts a like position.[4]

The AG and the Insurers base their argument on the premise that the Trustee is suing the D&O Insureds as successor to Debtors. Thus, they maintain, Endorsement 20 does nothing more than extend to the Trustee the typical limitation found in director and officer liability policies that an insured (here HCT or FWOH) cannot maintain against other insureds a suit in its own right that is subject to coverage. The Trustee, however, insists that, as plaintiff pursuing the D&O Insureds in the Trustee Suit, he acts in a derivative capacity, standing in the shoes of a creditor. Thus, he argues, the Trustee Suit falls within an exception provided in the Policies for derivative actions. If Endorsement 20 bars the Trustee from pursuing an action against the D&O Insureds when acting in his derivative capacity, the Trustee claims Endorsement 20 is an *ipso facto* clause and so is invalid or unenforceable by reason of section 541(c)(1) of the Bankruptcy Code (the "Code").[5]

---

[4] The AG, naturally, does not agree that he lacks standing to be pursue the AG Motion and, ultimately, to recover at the expense of the Insurers. The court has not reached those issues even preliminarily, since the AG is aligned with the Insurers respecting the effectiveness of Endorsement 20 as limiting coverage as to any suit by the Trustee.

[5] 11 U.S.C. §§ 101-1532 (2008).

Memorandum Opinion – page 5

B.  **Provisions of the Policies**

There are two relevant provisions of the ERI Policy (adopted by reference in the NUFIC Policy). First, Article III of the ERI Policy, titled Exclusions, in section B(3) (the "Exclusionary Provision") provides:

> (B)  The Underwriter shall not pay **Loss**, including **Defense Expenses**, for **Claims**:
>
>   . . .
>
> (3)  By or at the behest of the **Insured Entity**, except that this exclusion shall not apply to any derivative action brought totally independently of, and without the solicitation, assistance, participation or intervention of, any of the **Insureds** . . . .

(emphasis as in original). Article II of the ERI Policy defines "Insured" as the "Insured Entity" and any "Insured Person." "Insured Entity" is defined as HCT and its subsidiaries, which would include FWOH. "Insured Person" is defined to include officers and directors of the Insured Entity.[6]

The second pertinent provision of the ERI Policy is Endorsement 20, which states:

In consideration of the premium charged:

> (1)  In the event that a bankruptcy or equivalent proceeding is commenced by or against the **Insured Entity**, no coverage will be available under this Policy for any **Claim** brought by or on behalf of:
>
> (a)  the bankruptcy estate or the **Insured Entity** in the capacity as **Debtor in Possession**; or
>
> (b)  any trustee, examiner, receiver, liquidator, rehabilitator, conservator or similar official appointed to take control of, supervise, manage or liquidate the **Insured Entity**, or any assignee of any such official (including, but not limited to, any committee of creditors or committee of equity security holders).
>
> (2)  For the purpose of this endorsement, the term **Debtor in Possession** means a debtor under Chapter 11 of the United States Bankruptcy Code

---

[6] The ERI Policy, Article II (D), (E), (F), (H) and (J) and Declaration, Item 1.

Memorandum Opinion – page 6

> unless a person that has qualified under Section 322 of Title 11 of the U.S. Code is serving as a trustee of such debtor.

(emphasis as in original).

**C.      Statutory Provisions**

There are two provision of the Code[7] pertinent to resolving the Motions. First, section 541(c)(1) states:

> (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
>> (A) that restricts or conditions transfer of such interest by the debtor; or
>>
>> (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

Second, section 365(e)(1) provides:

> (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—
>
>> (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
>>
>> (B) the commencement of a case under this title; or

---

[7] The Parties referred the court to section 363(l) as well. Section 363(l) is not, however, directly relevant to the matter before the court, nor does it appear that its parsing would assist the court's analysis. Although the protection of section 363(l), unlike section 541(c)(1) and similar to section 365(e)(1), extends to avoid a provision in "a contract or applicable law . . . that effects . . . a modification . . . of the debtor's interest in . . . property." *See* Part III.C of this opinion below.

    (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

**D. Issue**

The issue posed by the Motions is whether Code § 541(c)(1) invalidates Endorsement 20 such that a judgment obtained by the Trustee against the D&O Insureds is subject to satisfaction under the Policies. Resolving this question, in turn, depends on (1) whether Endorsement 20 is an *ipso facto* clause and (2) whether it would operate in a fashion prohibited by section 541(c)(1). The answer to the latter question – whether Endorsement 20 is rendered inoperative by section 541(c)(1) – in turn depends on whether the effect of Endorsement 20 is to reduce the property rights of the Trustee under section 541(a)(1).[8]

### III. Discussion

**A. Is Endorsement 20 an *Ipso Facto* Clause?**

An *ipso facto* clause is a contractual or other provision that results in a loss of property rights or the elimination or limitation of obligations that existed prior to the commencement of a bankruptcy which loss, elimination or limitation occurs by reason of the debtor's bankruptcy (or a debtor's insolvency or financial condition or the appointment for a debtor of a custodian – triggers not relevant to the Motions[9]). *See* BLACK'S LAW DICTIONARY 834 (7th ed. 1999); *Northrop Grumman Tech. Servs. v. Shaw Group Inc. (In re IT Group, Inc.)*, 302 B.R. 483, 487 (D. Del. 2003) (citing 11 U.S.C. § 365(e)(1)); *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 240 n.1 (5th Cir. 2007). Thus, if Endorsement 20 results in a

---

[8] Section 541(c)(1) applies only to a property interest that becomes property of the estate under section 541(a)(1), (2) or (5). The latter two subsections are not implicated in the case at bar.

[9] Restrictions on transfer that would keep property from becoming property of the estate or that would, with some exceptions, limit the sale of property of the estate are also *ipso facto* clauses. *See, e.g.,* Code §§ 541(c)(1)(A) and 365(c).

diminishment of property rights as a result of Debtors' bankruptcy filings, it is an *ipso facto* clause.

The AG and the Insurers argue that the Trustee sues standing in the shoes of Debtors. Because, had Debtors asserted the claims asserted in the Trustee Suit prepetition, the claims, by reason of the Exclusionary Provision, would not have been covered by the Policies, they urge that Endorsement 20 does not result in keeping from the Trustee property rights Debtors had. In response the Trustee points to the exception in the Exclusionary Provision for true derivative suits, arguing that he brought his action against the D&O Insureds in *that* capacity.

Though the Insurers contest the Trustee's insistence that he stands in the shoes of a creditor acting derivatively, it does not appear that the capacity in which the Trustee acts would matter under Endorsement 20. Endorsement 20 provides there will be *no coverage* afforded "for any **Claim** brought by or on behalf of [Debtors'] bankruptcy estate." (emphasis as in original). Since, whether standing in the shoes of Debtors or a creditor, the Trustee would be bringing the claim "by or on behalf of" the estate, the claim would necessarily fall within the coverage limitation of Endorsement 20.

In the absence of bankruptcy, a derivative action could have been pursued against the D&O Insureds that would have been covered by the Policies. Any recovery on the claims asserted in such a derivative action would be subject to satisfaction by the Insurers under the Policies. Such recovery, being on a claim belonging to Debtors, would have gone to Debtors. *See Ross v. Bernhard*, 396 U.S. 531, 538 (1970) (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947)).

If a bankruptcy intervenes, it is the estate that is entitled to recovery on claims pursued derivatively of a debtor.[10] *See La. World Exposition v. Fed. Ins. Co. (In re La. World Exposition)*, 858 F.2d 233 (5th Cir. 1988); *In re P.R.T.C., Inc.*, 177 F.3d 774 (9th Cir. 1999); *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548 (3d Cir. 2003). Therefore, Endorsement 20 goes beyond the Exclusionary Provision. By barring coverage of any claim that would benefit the bankruptcy estate, Endorsement 20 excludes from coverage (and potential recovery) claims that would be covered, recovery on them redounding to the benefit of Debtors, outside of bankruptcy.[11] Because Endorsement 20 can so operate, it is, if it offends an applicable provision of the Code, an *ipso facto* clause.

**B.  Does Section 541(c)(1) Prevent Enforcement of Endorsement 20 as to the Trustee's Claims?**

Section 541(c)(1) is designed to make sure that whatever a debtor[12] has at case commencement or acquires pursuant to section 541(a)(5) becomes property of the estate. Because it operates only with respect to property that in those ways becomes property of the estate, section 541(c)(1) has no application to property the estate acquires through, e.g., fraudulent conveyance suits (11 U.S.C. § 541(a)(3) and (4)) or property that comes into the estate

---

[10] Claims brought derivatively are often pursued by a committee appointed under section 1102 of the Code – and Endorsement 20 also specifically excludes any such claim from coverage.

[11] During the Hearing the court and counsel for the Insurers engaged in a colloquy concerning hypothetical cases. Counsel opined that a derivative action that satisfied the exception to the Exclusionary Provision which was commenced prepetition would be subject to coverage even if taken over by a trustee following a bankruptcy filing. As to post-petition actions, counsel maintained there could be no derivative action that would fit the exception to the Exclusionary Provision. Leaving aside whether coverage of a prepetition action would survive Endorsement 20 following case commencement, and whether or not a derivative claim fitting the exception to the Exclusionary Provision could be asserted after an order for relief, certainly at least in the case of a derivative claim initiated after an involuntary petition is filed and before an order for relief, it would be possible for there to be a "true" derivative action that would not be subject to coverage merely because from the outset it would be for the benefit of the estate (as opposed to the insured debtor).

[12] Or a debtor's spouse to the extent of community property (Code § 541(a)(2)).

postpetition as profits or proceeds of property held by a debtor at case commencement. 11 U.S.C. § 541(a)(6).

The AG and the Insurers argue that the property interest of Debtors' estates in the Policies is limited to ownership of the Policies – i.e., the estate has no right to proceeds of the Policies. *See In re La. World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1993); *In re Edgeworth, M.D.*, 993 F.2d 51, 55 (5th Cir. 1993). The Trustee, on the other hand, maintains that, as the D&O Insureds are covered by the Policies as to derivative claims, and, as the claims asserted in the Trustee Suit are derivative, his pursuit of such derivative claims gives him an interest in the proceeds of the Policies. This, he argues, in turn allows him to invoke section 541(c)(1) vis-à-vis the Insurers.

C. **What is the Nature of the Trustee's Property Interest?**

The short answer to the question of what property the Trustee acquired by virtue of Code § 541(a)(1) is that the Insurers are correct. Debtors owned the Policies at case commencement. The Trustee now owns the Policies and may exercise whatever rights Debtors had under those Policies – as could Debtors, the Trustee may expect coverage under the Policies, but he does not have a right to the proceeds of the Policies.

Under Code § 365(b), (c)(1) and (e), assuming they are applicable to the Policies, Endorsement 20 could not be used as a basis for denying coverage to the Trustee in a derivative action brought for the benefit of the estate of HCT or FWOH, because under those sections enforcement of Endorsement 20 would act as an *ipso facto* clause.[13] Indeed, the language of

---

[13] A representative of the estate of one of Debtors arguably could, in a derivative capacity, pursue claims against the estate of the other of Debtors. If such a suit were brought outside of bankruptcy – e.g., if creditors or others acting derivatively brought suit on behalf of FWOH against HCT – it would be covered under the exception to the Exclusionary Provision. The same suit, commenced after commencement of a bankruptcy, would fall within Endorsement 20 and so not be subject to coverage. While such a suit is not likely in the present context where both Debtors have the same trustee, it would of course be possible for a trustee (or other estate representative) of FWOH to assert claims against its parent, which would have to be defended by the parent's trustee. Because

Memorandum Opinion – page 11

section 365(e)(1) is markedly different from that of section 541(c)(1). While the latter refers to property becoming property of the estate notwithstanding an *ipso facto* clause, the former bars operation of such a clause to terminate or modify a contract[14] or to terminate or modify "any right or obligation under such a contract." Thus, the Trustee should be entitled to the same coverage under the Policies as Debtors would have been: in the event that a derivative suit of the sort as to which FWOH or HCT would be entitled to coverage is initiated against one of Debtors, either of their estates or the Trustee in his trustee capacity, Endorsement 20 would be ineffective to deny coverage.[15] That the Trustee may be entitled by virtue of section 365(e) to the benefit of Debtor's bargain with the Insurers notwithstanding Endorsement 20 does not mean, though, that the Trustee is entitled to receive any proceeds from the Policies.

---

"Insured Entity," as used in Endorsement 20, means both FWOH and HCT, the effect of Endorsement 20 would be to exclude the defendant trustee from coverage.

[14] During the Hearing, counsel for the Insurers argued that the Policies were not executory contracts. While there is no question the Policies are contracts (*see Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008) ("Insurance policies are written contracts . . . .")) he maintained they are not executory because all premiums were previously paid by Debtors. The court need not reach this issue to decide the Motions, but it is at least arguable that the Policies at case commencement were and even today are executory contracts, in that not only the Insurers but also Debtors may be required to perform under certain of their provisions. For example, Debtors (and the other insureds) are obligated under Article IV, section D of the ERI Policy to cooperate in defense of claims made and to "do everything necessary" including "execution of any documents" to assist ERI in pursuing rights of the insureds to which it is subrogated. This view has support in the case law. *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985), *cited with approval in In re Placid Oil Co.*, 72 B.R. 135, 138 (Bankr. N.D. Tex. 1987). As the NUFIC policy subsumes the ERI Policy, the same would apply to it.

On the other hand, there is a substantial body of case law that supports the Insurers' position that, regardless of obligations such as those in the Policies, an insurance policy is not an executory contract if premiums have been fully paid. *See*, *e.g.*, *In re Surfside Resort and Suites, Inc.*, 344 B.R. 179, 185-87 (Bankr. M.D. Fla. 2006) and cases cited therein. Most of these cases, however, are distinguishable on various bases and most involved efforts by insurers to avoid extending coverage to the estate of a insured debtor on the basis that assumption of a policy was a necessary prerequisite to such coverage. In the instant case, on the other hand, the question is whether section 365(e)(1) does not protect rights under the Policies from the operation of an *ipso facto* clause because the debtor has paid all the premiums. It would seem an anomalous result if section 365(e)(1) would have provided protection against the operation of Endorsement 20 if premiums remained to be paid, yet Endorsement 20 would operate to limit coverage because the Insurers were paid in full prior to case commencement.

[15] Interestingly, section 365(e)(1)'s scope is not limited to rights of a debtor or obligations owed a debtor. It appears from the language of the section that any party entitled to enforce rights under an executory contract of a debtor is entitled to the protection of section 365(e)(1). Cf. section 363(l)

Memorandum Opinion – page 12

Even assuming that the existence of his claims against the D&O Insureds leads to a recovery, the moneys that will be recovered do not fall within the ambit of Code § 541(a)(1). While, like the Policies, the claims urged in the Trustee Suit became property of the estate under section 541(a)(1), Endorsement 20 in no way hindered or limited the passage of those claims – whether derivative or as property of Debtors – into Debtors' estates, and section 541(c)(1) is not implicated at all.

The *proceeds* of the Policies are entirely different from the Policies themselves or the claims made in the Trustee Suit. For an interest to pass to the Trustee and fall within section 541(a)(1) (and so Code § 541(c)(1)), it must have been a "legal or equitable interest[] of [Debtors] in property as of the commencement of the case." Even assuming that language would include a derivative claim (and the court is not convinced that the Trustee may invoke section 541(c)(1) in his Debtors' shoes to protect rights he asserts in a creditor's shoes), it would not include proceeds of the Policies which might one day be paid to satisfy potential recoveries on that derivative claim.

The law is clear that property interests are determined by state law. *Butner v. United States*, 440 U.S. 48 (1979); *see also Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 329 (1993). Under Texas law, a victim whose claim against a tortfeasor is subject to satisfaction pursuant to an insurance policy does not have a property interest in the proceeds of the policy before the claim is reduced to a judgment against the tortfeasor, let alone at a time when the claim has not even been asserted, as was true at the time of case commencement of the claims made in the Trustee Suit. *See Great Am. Ins. Co. v. Murray*, 437 S.W.2d 264, 265 (Tex. 1969) (providing that an injured third-party does not have a cause of action against an insurer until a judgment has been rendered against the insured establishing that the insured is in fact liable for the injury);

Memorandum Opinion – page 13

*Standard Fire Ins. Co. v. Sassin*, 894 F. Supp. 1023, 1027 (N.D. Tex. 1995) (applying Texas law on liability insurance and finding that until judgment was entered in the underlying tort suit, the tort plaintiffs alleging injury had no legally cognizable interest in the liability policy between the insured and insurer); *Gracida v. Tagle*, 946 S.W.2d 504, 507 (Tex. App.—Corpus Christi 1997, no writ) ("A claimant has no contractual rights under an insurance policy until he obtains a judgment against the insured."); *O/E Sys., Inc. v. Inacom Corp.*, 179 F. Supp. 2d 363, 367 (D. Del. 2002) (holding third-party plaintiff who sued liability insurer directly could not recover proceeds under the policy because plaintiff had neither received an assignment of policy rights nor obtained a judgment against the insured).

Thus, even if the Trustee may have some entitlement some day to receive proceeds from the Policies, neither he nor Debtors had any "legal or equitable interest" in proceeds of the Policies when Debtors' cases were commenced, and so he does not have an interest in the proceeds that falls within section 541(a)(1). Because whatever claim the Trustee may one day have to the proceeds of the Policies did not become property of Debtors' estates under section 541(a)(1), section 541(c)(1) plays no role in the determination of whether the Insurers are liable under the Policies for the conduct of the D&O Insureds.

### IV. Conclusion

For the foregoing reasons, the court concludes that partial summary judgment should be granted as requested in the Insurers Motion. Because that relief is coterminous with the relief sought in the AG Motion, the court, recognizing the possible infirmity of the AG's standing, will not address the AG Motion. The Trustee Motion must be denied.

In its ruling, the court does not address the question of whether Endorsement 20 is valid to limit claims by the D&O Insureds. Not only were the D&O Insureds not participants in the

proceedings on the Motions (with the exception of Statement of Position of the D&O Defendants), but also a number of issues remain (including whether the Policies are executory contracts) that would have to be addressed to determine what rights, if any, the D&O Insureds have under the Policies in connection with claims made against them in the Trustee Suit or by the AG.

Counsel for the Insurers is directed to prepare and submit to the court, with simultaneous service of a copy on each other party in this adversary proceeding, a partial judgment consistent with the foregoing. Such judgment shall include language making clear that it is without prejudice to whatever rights the D&O Insureds may have to coverage under the Policies, including any right to require the Insurers to satisfy all or any part of a judgment obtained by the Trustee or the AG. Other parties to this adversary proceeding shall provide the court with comments on the proposed judgment within five calendar days of its submission to the court.

# # # # END OF MEMORANDUM OPINION # # # #